Ruffin, Chief Justice,
 

 after stating the facts, as above, proceeded as follows :—
 

 The plaintiffs are entitled certainly to a reference for the purpose of ascertaining the state of the funds in Morrison’s hands, and of the debts to which they are applicable ; and they must have it, if they choose to run the risk of the expense of it, should the inquiry turn out against them. With the view of ascertaining the utility of proceeding to take an
 
 *88
 
 account the hearing was brought on upon the single question : which set of the creditors — those whom Mr. Morrison was t0 pay- or those for whose benefit the assignment was made to Mr. Jones — are entitled to be first satisfied out of the fund in the hands of the former, This course was adopted, as it was understood by the Court, because if that question be decided in favor of the former class, all the fund that is available, will be exhausted without satisfying them, and the plaintiffs would deem it useless to proceed further in the cause.
 

 Upon the particular point discussed, the Court is clearly of opinion against the plaintiffs. Neither class of creditors nor their trustee have a legal assignment of the debts from Hoskins. Accounts cannot be so assigned; and bonds and notes can only be by endorsement. They both, then, claim by equitable assignments. Each of them is valid against the representative of Hoskins ; and as between each other, the rule is, that which is prior is preferable. It may, though, be at once remarked, that as far as Mr. Morrison satisfied the specified debts by applying the funds to
 
 their payment,
 
 or by discharging Hoskins by taking up his notes and giving his own, before the execution of-the deed to Mr. Jones and notice of it, the transaction stands upon sufficient grounds to support it, without reference to the doctrine of an equitable assignment to the creditors. It was an actual appropz’iation and payment of Hoskins’ money, by his direction, and to his use. This includes the debt to Mr. Morrison himself, to Carson, and to any others in the like situation, With respect to the creditors who were not paid, the question is, whether what passed between Hoskins, Morrison, and those creditors gives them a lien on this fund anterior to the assignment of the 20th of February, 1834. We think it undoubtedly does. The evidences of debt were deposited with the intention that they should be a security for those debts. If that were not sufficient until rejection by the creditors, yet when this deposite and the purpose of it were, upon the request of Hoskins, communicated to the creditors, and their acceptance of it as a security solicited, and they did accept it; we must hold it to amount to an assignment in this Court. All parties so intended and understood. The creditors took
 
 *89
 
 no other means of collecting or securing their debts, but urged diligence on Mr. Morrison, and a speedy payment by him. Hoskins had every reason to be satisfied that it should be so regarded by them, as wéll as himself. That he considered the fund thus far specially appropriated is clear from his communication to his other creditors at the time he made the deed of trust. If he could have countermanded his instructions to Morrison, viewing him simply as his own attorney and agent, it is certain that he did not intend to countermand them,' and that he did not then look upon Morrison as his agent only, but as a person authorized to act on behalf of the creditors who had accepted, and to hold the fund for their benefit. The deed is expressed in the comprehensive terms, “ all the debts in the hands of Morrison,” because, if they proved good, there would still be a considerable surplus, nearly $4,000. But he told them that he had given orders for the payment thereout of the other debts, and that they could only get the residue after the satisfaction of those debts ; and to that effect he gave information to Mr. Morrison within a few days. It is not stated precisely when the several creditors acceded to the arrangement; but it must be presumed they had all done it prior to the 20th of February, because it appears' they were written to early in January and returned answers, and in due course of mail all the answers could have been received before the expiration of January. Their assent, however, is to be assumed, until the contrary is shown, which is not pretended. The deed of trust was therefore taken with express notice that it was the intention of Hoskins that the class of debts mentioned in the instructions to Morrison should be first paid; and if there wrere nothing else in the case but the instructions and this notice, it would postpone those claiming under the deed of February. It makes it an assignment of the balance after the payment of the other class of debts.
 

 It must therefore be declared that the plaintiffs are not entitled to any part of the fund placed in the hands of Morrison, until all the debts mentioned in the instructions to him shall have been first fully paid. If the plaintiffs do not proceed to draw up an order of reference within a reasonable
 
 *90
 
 time; say on or before the 1st of February next, the bill must then stand dismissed with costs.
 

 pER Curiam. Decree accordingly.